UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EVIG, LLC, | Case No. 2:24-cv-00065-RFB-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| NEW RELIEF, LLC d/b/a/ VITAMAX, *et al.*, | |
| Defendants. | |

Before the Court is the Motion to Dismiss (ECF No. 8) submitted by Defendants New Relief, LLC, David H. Schindler, and Matthew J. Schindler. For the following reasons, the Court grants the motion and dismisses the Complaint with prejudice.

**I.  FACTUAL ALLEGATIONS**

The following allegations are taken from the Complaint.

Plaintiff EVIG, LLC, and Defendant New Relief are both dietary supplement producers who sell their products under the trade names Balance of Nature and Vitamax respectively. EVIG and its predecessors have sold Balance of Nature nationally and in Nevada specifically for more than 20 years. EVIG has advertised extensively on radio and television. EVIG believes they were the first to use the term "veggies" as a shortening for vegetables in their trade dress. EVIG's products are famous and well-known in Nevada and nationally. On September 25, 2020, New Relief incorporated. David and Matthew Schindler conspired to copy Balance of Nature for profit, to take advantage of EVIG's popularity and goodwill, and trick customers into buying their Vitamax product. Since July 28, 2022, Vitamax has been sold on Amazon and eBay. In doing so, they have created customer confusion regarding their products.

## II. PROCEDURAL HISTORY

On September 8, 2023, EVIG filed the Complaint in Nevada state court and Defendants timely removed on January 8, 2024. ECF No. 1. On January 16, 2024, Defendants filed the instant Motion to Dismiss. ECF No. 8. The Parties fully brief the motion. ECF Nos. 11, 12. On September 26, 2024, the Court held a hearing. ECF No. 24. The Court's Order follows.

## III. LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. APT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION

The Court now turns to the merits of the instant Motion to Dismiss. EVIG brings eleven causes of action. Defendants argues each claim should be dismissed as either erroneously

brought or wrongfully pled. For the following reasons, the Court agrees with Defendant and dismisses the Complaint with prejudice.

### A. Plaintiffs Remedy Claims Fail

EVIG brings three claims for remedies: Injunctive Relief, Constructive Trust, Unjust Enrichment ("Remedies Claims").[1] The Court finds the Remedies Claims must be dismissed.

First, it is well-settled that injunctive relief is solely a form of relief, not an independent cause of action. See, e.g., State Farm Mitt. Auto. Ins. Co. v. Jafbros Inc., 860 P.2d 176, 178 (1993). Accordingly, the Court dismissed the Injunctive Relief claim.

Second, "imposition of a constructive trust requires: (1) that a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice." Waldman v. Maini, 195 P.3d 850, 857 (2008). "[A] confidential relationship may arise by reason of kinship or professional, business, or social relationships between the parties. Such a relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind[.]" Perry v. Jordan, 900 P.2d 335, 337-38 (1995). There is no pleading of a confidential relationship between the Parties. Indeed, the pleadings are clear—they are competitors. Accordingly, the Court dismisses the Constructive Trust claim.

Third, unjust enrichment is a theory of restitution in which a plaintiff confers a benefit and seeks payment of "as much as he . . . deserve[s]" for that benefit. Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 257 (Nev. 2012). Unjust enrichment has three elements: (1) the plaintiff confers a benefit on the defendant, (2) the defendant appreciates such benefit, and (3) there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Nautilus Ins. Co. v. Access Med., LLC, 482 P.3d 683, 688 (Nev. 2021). There is no pleading that any benefit was "conferred" by Plaintiff on Defendants. Again, the Complaint is clear that Defendants allegedly appropriated Plaintiff's property. The Court dismisses this claim.

In sum, all three Remedies Claims are dismissed with prejudice.

---

[1] In the Complaint, these are numbered as Claims 1, 9, 10.

1  Leave to amend should be denied if the proposed amendment is futile. Carrico v. City &
2  Cnty. of S.F., 656 F.3d 1002, 1008 (9th Cir. 2011). Given the fatal flaws detailed above, the
3  Court denies leave to amend the Remedies Claims as futile.

### B. Plaintiffs False Association Claims

EVIG brings four claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, related to false association: False Association, Trade Dress Infringement, Unfair Competition, and Trade Dress Violation ("False Association Claims").[2] "It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012). "Section 1125(a) [of the Lanham Act] . . . creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014). Here, the above three claims rely exclusively on applying identical facts to the same provision of the Lanham Act: § 1125(a)(1)(A) false advertising. Therefore, the Court considers all four claims together here and finds they must be dismissed.

"The Lanham Act prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services." OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc., 897 F.3d 1008, 1013 (9th Cir. 2018). The form of false association claim brought by EVIG relates to "trade dress." See Jason Scott Collection, Inc. v. Trendily Furniture, LLC, 68 F.4th 1203, 1212 (9th Cir. 2023). Under the Lanham Act, trade dress refers to "the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

Lanham Act trade dress infringement requires a plaintiff to prove: (1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion. Clicks Billiards, Inc., 251 F.3d at 1257. Only "design features that are nonfunctional" are protected as trade dress. Id.

---

[2] In the Complaint, these are numbered as Claims 2, 3, 4, and 6.

- 4 -

at 1258. However, "[t]he fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, 'functional elements that are separately unprotectable can be protected together as part of a trade dress.'" Fuddruckers, Inc. v. Doct's B.R. Others, Inc., 826 F.2d 837, 842 (9th Cir. 1987).

The Court begins with EVIG's claimed trade dress. The elements of the alleged trade dress must be clearly listed and described. Jason Scott Collection, Inc., 68 F.4th at 1213. Nevertheless, "[a] plaintiff may define its claimed trade dress as the 'overall appearance' of its product." Blumenthal Distrib., Inc. v. Herman Miller, Inc., 963 F.3d 859, 865 (9th Cir. 2020). When the claimed trade dress is an overall appearance, the Lanham Act's functionality test must be applied with extra scrutiny. Jason Scott Collection, Inc., 68 F.4th at 1213 (citing Blumenthal Distrib., Inc., 963 F.3d The Court may take judicial notice of documents referenced in or integral to a Complaint. Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998).

EVIG argues the following combination of elements establish Balance of Nature's protectable trade dress: (1) the name Balance of Nature with (2) the "a" in "Nature" replaced by a leaf image, located (3) in the top-center of the bottle and (4) followed by the term "Whole Produce" and (5) either "Fruits" or "Veggies" (6) with "distinctive" fonts (7) and yellow lettering used; (8) a layout of fruits or vegetables used as imagery; (9) a red or green bottle and lid (10) packaging 90 capsules and (11) listing that quantity information; (12) the use of three formulated blends of (13) 16 fruits and 15 vegetables (14) whose weights are listed on the back of the bottle. Defendants counter that EVIG has simply cobbled together a list of functional or generic attributes and even taken together, they are not a protectable trade dress.

The Court now considers the trade dress itself. The Court may take judicial notice of documents referenced in, or integral to, the complaint without converting a 12(b)(6) motion into a motion for summary judgment, as long as no party questions their authenticity. Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998). The image of both products is heavily discussed and integral to EVIG's claims, and neither Party contests the accuracy of any of the images included in the briefing. In addition, the Court may rely upon materials attached to a complaint. See Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007). A sufficiently

1  analogous black-and-white version of these photographs are included in the Complaint.
2  Therefore, the Court takes judicial notice of the following images of the Parties' products:




EVIG's product is the left image and New Relief's product is the right image.

The Court finds that Plaintiff's claimed trade dress is functional and, thus, unprotected. While they "do not [always] translate easily[,]" the Ninth Circuit has provided four factors to consider: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Clicks Billiards, Inc., 251 F.3d at 1260. The Court looks to the trade dress as a whole rather than individual elements. Fuddruckers, Inc., 826 F.2d at 842. EVIG seeks protection for the combination of using its own logo, generic descriptions, images, and standard product information, and its placing of pills in a bottle. Clicks Billiards, Inc. is analogous and relied on "sufficient evidence of the arbitrariness and non-functional nature of its design decisions and the availability of alternative designs" to competitors in the industry. 241 F.3d at 161. Neither placing a brand name on the front of a product, nor the use of red or green to indicate a product is related to fruits or vegetables nor placing pills in a bottle nor the term

"veggies" nor including information concerning ingredients nor the use of "whole produce" are arbitrary or non-functional. These are practical not "aesthetic" decisions. Id. at 1261-62. There is nothing "distinctive" about the collection. Fuddruckers, Inc., 826 F.2d at 842. Indeed, granting EVIG's claimed trade dress would deplete the supplement industry of whole colors, basic terminology, and the ability to include essential information concerning the number of pills in a container or the weights of ingredients. See id. at 842-43 ("A restaurateur cannot prevent others from using any particular color or feature[.]"); see also PIM Brands Inc. v. Haribo of Am. Inc., 81 F.4th 317, 322 (3d Cir. 2023) (holding a candy's color scheme is functional as it identifies flavor). Put simply, the Court finds the elements identified by EVIG are functional as a whole.

Because there is no protectable trade dress, the Court finds that Plaintiff's False Association Claims fail. They are dismissed. Having carefully considered the full trade dress and heard arguments from the Parties about what additional elements could be pleaded, the Court also denies leave to amend as futile. See Carrico, 656 F.3d at 1008.

### C. Intentional Interference with Prospective Economic Advantage

EVIG also claims Defendants are liable for Nevada common law Intentional Interference with Prospective Economic Advantage ("IIPEA").[3] IIPEA requires pleading: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. Wichinsky v. Mosa, 847 P.2d 727, 729-30 (Nev. 1993). Importantly, IIPA also known as Wrongful Interference with Prospective Economic Advantage, requires some wrongful act. See Kahn v. Dodds, 252 P.2d 681, 704 (Nev. 2011) (Pickering, J., dissenting) ("It is hornbook law that the actions complained of in a claim for intentional interference with prospective advantage must be wrongful.");[4] Roy Allan Slurry Seal, Inc. v.

---

[3] In the Complaint, this is identified as Claim 5.

[4] While the majority expressly declined to reach this issue, Kahn, 252 P.3d 703 n.12, and the Nevada Supreme Court has not previously stated this element, the Court finds that the Nevada Supreme Court would adopt this majority rule and, thus, applies it. See Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007) ("The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state

Am. Asphalt S., Inc., 388 P.3d 800, 803 (Cal. 2017) (requiring an IIPEA claim show "intentionally wrongful acts" by the defendant); see also W. Page Keeton, Prosser and Keeton on Torts §130 (5th ed. 1984) ("[I]t goes almost without saying that it is not 'improper' to engage in competition for prospective gain, so long as the means used are not themselves improper."). The Court has already determined that EVIG has no protectable trade dress. Therefore, Defendants' complained-of actions is simply their normal participation in the free market. There is nothing improper about Defendants' conduct. The Court finds this is insufficient to sustain an IIPEA claim and further finds that amendment would be futile. See Carrico, 656 F.3d at 1008.

### D. Nevada Deceptive Trade Practices

EVIG further also argues Defendants violated the Nevada Deceptive Trade Practices Act ("NDTPA").[5] The NDTPA provides a private cause of action for "any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600 "Consumer fraud" is defined as any "deceptive trade practice" as defined in NRS 598.0915 to 598.0925. To plead a NDTPA claim, a plaintiff must plead (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.[6] See Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 658 (D. Nev. 2009). EVIG identifies NRS § 598.0915(3) and .0915(4) as the relevant definitions.

First, the Court finds that § 3 does not apply. Section 3 makes it a deceptive trade practice to, in the course of one's business or occupation, to "[k]nowingly makes a false representation as to affiliation, connection, association with or certification by another person." Nev. Rev. Stat. § 598.0915(3). Because this provision requires a false representation, it sounds in fraud and triggers the heightened pleading requirements of Rule 9(b). Plaintiff appears to argue that § 3 applies because Defendants made a false representation as to their products affiliation with EVIG. The Court finds that there is no pleading that would establish any false representation

---

right is without discrimination because of the federal forum."). In making this determination, the Court relies upon intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance, including those cited above. Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004).

[5] In the Complaint, this is identified as Claim 7.

[6] The parties do not dispute the second (causation) and third (damages) elements of the NDTPA for any of the six claims. Nevertheless, the Court independently finds that Plaintiffs sufficiently pleaded these elements for each claim.

made by Defendants as to Vitamax's affiliation with EVIG, much less one rising to the Rule 9(b) threshold. Comparing Plaintiffs' products makes this clear. New Relief trades under Vitamax while EVIG uses Balance of Nature and their color scheme, images, and labeling are different. Therefore, the Court finds the § 3 theory fails.

Second, the Court finds that § 4 is even less applicable. Section 4 makes it a deceptive trade practice to "us[e] deceptive representations or designations of geographic origin in connection with goods or services for sale or lease" in the course of one's business or occupation. Nev. Rev. Stat. § 598.0915(4). Again, the heightened fraud pleading standard applies. See Fed. R. Civ. P. 9(b). Nowhere in the pleadings is there any allegation that Defendants make any claim regarding the geographic origin of their products. Therefore, the Court finds that EVIG's § 4 theory fails.

Because both theories fail, the Court finds the NDTPA claim must be dismissed. As the Court has identified fatal failings, leave to amend is denied. See Carrico, 656 F.3d at 1008.

**E. Dilution**

Finally, Plaintiff brings two claims for dilution under the Lanham Act and the Nevada's dilution act, Nev. Rev. Stat. § 600.435 ("the Dilution Claims.").[7] Both Dilution Claims require a protectable mark. See Nev. Rev. Stat. § 600.435(1) (protecting "the owner of a mark" with injunctive relief); 15 U.S.C. § 1125(c)(1) (protecting "the owner of a mark" with injunctive relief). The Court has already determined above that there is no protectable mark in this case. Therefore, the Court dismisses the Dilution Claims with prejudice. Additionally, the Court finds this fatal defect is fatal and denies leave to amend. See Carrico, 656 F.3d at 1008.

///
///
///
///
///
///

---

[7] The Complaint identities pleads both separate sections but numbers both as Claim 8.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** the Motion to Dismiss (ECF No. 8) submitted by Defendants New Relief, LLC, David H. Schindler, and Matthew J. Schindler is **GRANTED**. The Complaint is **DIMISSED with prejudice** in its entirety. The Clerk of Court is instructed to close the case.

**DATED:** September 29, 2024.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**